**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN  DIVISION**

| | | |
|---|---|---|
| ISAIAH EVANS, et al., | ] | |
| | ] | |
| **Plaintiffs,** | ] | |
| | ] | |
| v. | ] | **CV-05-BE-1017-E** |
| | ] | |
| WALTER INDUSTRIES, INC., et al., | ] | |
| | ] | |
| **Defendants.** | ] | |
| | ] | |

**MEMORANDUM OPINION**

This case comes before the court on the following motions: "Defendant U.S. Pipe and Foundry Company, LLC's Motion to Dismiss Plaintiffs' Third Amended Complaint" (doc. 162); "Motion of Defendant Phelps Dodge Industries, Inc. to Dismiss the Third Amended Complaint for Failure to State a Claim Upon Which Relief Can Be Granted" (doc. 165); "FMC's and United Defense's Motion to Dismiss the Third Amended Complaint With Prejudice" (doc. 166); "MW Custom Papers, LLC's Motion to Dismiss Plaintiffs' Third Amended Complaint" (doc. 168); "Plaintiffs' Request for Oral Argument" (doc. 175); and another "Plaintiffs' Request for Oral Argument" (doc. 181).  The parties have fully briefed these motions.  For the reasons stated below, U.S. Pipe's motion (doc. 162), Phelps Dodge's motion (doc. 165), FMC's and United Defense's motion (doc. 166), and MW Custom's motion (doc. 168) will be GRANTED IN PART and DENIED IN PART, as set forth below.  Plaintiffs' motions for oral argument (docs. 175 & 181) will be DENIED.  A separate order to that effect will be entered simultaneously.

1

## I.  PROCEDURAL HISTORY

This case has already had a long and tortuous history, even though still at the pleading stage. The Plaintiffs originally filed their class action suit on April 8, 2005, in Calhoun County Circuit Court.  The Defendants removed the case under the removal provision of the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified at 28 U.S.C. § 1332(d)(2)).  The Plaintiffs sought remand, asserting that the case fell within the "local controversy exception" in CAFA, which requires a federal court to decline jurisdiction if more than two-thirds of the plaintiff class are in-state residents and at least one in-state defendant is a "significant" defendant within the meaning of CAFA.  *See* 28 U.S.C. § 1332(d)(4)(A).  The court agreed that the case presented a "local controversy," because the heart of this case involves damage to real property in Calhoun County, Alabama, and remanded the case to state court.  The Defendants appealed under 28 U.S.C. § 1453(c), and the Eleventh Circuit reversed, holding that the court's finding of purely local matter was based on "speculation."  *Evans v. Walter Indus., Inc.*, 449 F. 3d 1159 (11th Cir.  2006).

Since its return to this court, the Plaintiffs have tried to properly plead their case.  The motions to dismiss currently before the court challenge the Third Amended Complaint ("TAC"), filed on July 27, 2007, as barred by Alabama's statute of repose and statute of limitations, for failure to state causes of action, and for lack of subject matter jurisdiction.  Because Plaintiffs' TAC on its face indicates that MW Custom operated various facilities "no later than 1977" and Phelps Dodge operated its facilities "no later than 1983," the court ordered the Plaintiffs to show cause why the claims against these two Defendants should not be dismissed as time barred.  (Order, docs. 171 & 172).  The Plaintiffs filed their joint brief (doc. 174), to which the Defendants replied (docs. 178 & 179).  The court set briefing schedules on the motions to dismiss filed by U.S. Pipe, FMC, and

United Defense.  Plaintiffs filed a joint brief (doc. 180), to which Defendants replied (docs. 183 & 184).

## II.  STANDARDS OF REVIEW

### A.     Motion to Dismiss

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint.  Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)).  A plaintiff must provide the grounds of his entitlement, but Rule 8 generally does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (quoting *Conley*, 355 U.S. at 47).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 127 S. Ct. at 1969.  "[S]tating such a claim requires a complaint with enough factual matter (taken as true) to suggest" the required elements.  *Id.* at 1965.

Thus, contrary to Plaintiffs' continued position that they need not set forth detailed facts in support of their claims  (Pls.' Resp. Mots. Dismiss TAC, doc. 180, 25), *Twombly* did abrogate that portion of *Conley* – which Plaintiffs continue to site in support of their position – that precludes dismissal unless "no set of facts" exists.  Rather, the Plaintiffs bear the burden of alleging a set of facts – albeit *any* set of facts – in support of their claims.  Plaintiffs also ignore the limits of a motion to dismiss by citing in their briefs facts not alleged in the TAC and by attaching to their briefs exhibits in support of their claims.  At the motion to dismiss stage, this court may only review the allegations in the complaint, unless the court converts the motion to dismiss into a motion for

3

summary judgment and allows all parties to submit evidence. *See Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1267 (11th Cir. 2002). The court will not convert the current motions to dismiss into motions for summary judgment and, therefore, will disregard Plaintiffs' exhibits and look only to the TAC for factual allegations.

In evaluating a motion to dismiss, the court assumes that all factual allegations set forth in the complaint are true, *United States v. Gaubert*, 499 U.S. 315, 327 (1991), and construes all factual allegations in the light most favorable to the plaintiff. *Brower v. County of Inyo*, 489 U.S. 593, 598 (1989). In other words, "[o]n a motion to dismiss, the facts stated in the . . . complaint and all reasonable inferences therefrom are taken as true." *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006) (citing *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990). To succeed on a motion to dismiss under Rule 12(b)(6), therefore, a defendant must demonstrate that the plaintiff has failed to give sufficient notice of a proper claim and the grounds upon which that claim rests.

### B.    Lack of Subject Matter Jurisdiction

Although the court may not consider anything outside the complaint for purposes of Defendants' arguments regarding the statute of limitations, rule of repose, and failure to state a claim, "when a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1), the district court is free to independently weigh facts, and may proceed as it never could under Rule 12(b)(6)." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003). Because the issue presented by a motion to dismiss under Rule 12(b)(1) is "the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the exercise of its power to hear the case." *Id.* Accordingly, the court will

consider all materials submitted by the parties when addressing its subject matter jurisdiction.

### III. BACKGROUND

The focus of the current motions is the TAC; thus, a brief description of the factual allegations and claims asserted is necessary before proceeding.

Plaintiffs' thirty-six page TAC in essence asserts that these Defendants and others operated foundries and smelters in or near Anniston, Alabama; that, as part of Defendants' manufacturing operations, they discharged contaminated waste water, spent foundry sand, and other contaminated materials into water sources and/or discharged pollutants into the air; that these discharged materials contained "lead, cadmium, zinc, chromium, arsenic and/or other hazardous substances;" and that these pollutants and hazardous substances ultimately were deposited on Plaintiffs' properties, causing various property damages, including diminution of value.[1]  The TAC alleges that the Defendants disposed of contaminated foundry sand by giving it away or selling it as fill material for commercial and residential properties.  (TAC ¶ 36).[2]

The Plaintiffs purport to represent four classes of Plaintiffs who sustained property damage under the state law theories of negligence, wantonness, nuisance, and trespass.  Classes 1, 2, and 3 are defined by the proximity of the purported class members' properties to designated Defendants' foundries from which waste emissions were allegedly deposited "by air emissions, and through water migration" on their properties.  (TAC ¶ 44).  Class 1 names Defendants MW Custom, FMC, and

---

[1] The Plaintiffs omitted from the TAC their original claims for personal injury damages.

[2] Paragraph 36 only references Defendants U.S. Pipe & Foundry and MW Custom Papers as the defendants who participated in this activity and "who are defendants named in Class 4." However, the description of Class 4 in Paragraph 44 lists as defendants these two defendants as well as FMC Corp.; United Defense, LP; Phelps Dodge Industries, Inc.; and "all other defendants."

United Defense.  Class 2 names Defendant U.S. Pipe.  Class 3 names Defendant Phelps Dodge.

Defendants refer to these classes as the "Indirect Emissions" Plaintiffs.[3]  Class 4, however, includes

owners of property located in Calhoun County, Alabama, who "have had waste substances . . .

transported from any of . . . [the Defendants'] locations, and deposited on their property, or deposited

onto a neighboring property where" the substances migrated onto their property.  (TAC ¶ 44).

Defendants refer to Class 4 as the "Direct Placement" Plaintiffs, because Class 4 alleges that

Defendants "transported . . . and deposited" contaminants onto their properties.  (TAC ¶ 44).

Some of the named Plaintiffs who seek to represent Class 4 – Alberta McCrory, James A.

Bailey, Dorothy Elston, Carol Smith, and Lora M. Malone – allege that *U.S. Pipe* placed spent

foundry sand on his or her property during the time the relevant foundry or smelter operated.  (TAC

¶¶ 4, 13, 14, 16, 18).  Other named Plaintiffs seeking to represent Class 4 – Kelvin Howard, Michael

Washington, Lorenzo Sistrunk, Macy Carter, and James E. Whatley  – allege that *MW Custom*

deposited spent foundry sand on his or her property.  (TAC ¶¶ 8-11, 17).  Other named Plaintiffs

seeking to represent Class 4 – Isaiah Evans, Roseada Bailey, Darrell Brunson, and Brenda Gray –

simply allege that "*one of the Defendants*" deposited spent foundry sand on his or her property.

(TAC ¶¶ 3, 5, 6, 12).  Despite the fact that ¶ 36 names only U.S. Pipe and MW Custom Papers as

Class 4 Defendants, other portions of the TAC – such as the allegations of the named Class 4

Plaintiffs described above and ¶ 44, which mentions "all other defendants" – are inexplicably

inconsistent.

In describing the Defendants, the TAC specifically states that MW Custom and/or its

---

[3] Plaintiffs dispute that anything was "indirect."  The court presumes that Defendants use
the term "indirect" in reference to those contaminants that allegedly traveled via air, water, or
other means except being physically transported by Defendants.

predecessors operated various foundries in Anniston until "no later than 1977" (TAC ¶ 25); that

Phelps Dodge operated foundries and smelters from "1963 until October 26, 1983" (TAC ¶ 30); that

U.S. Pipe operated a facility "from 1961 to 2003" (TAC ¶ 20); and that FMC and United Defense

operated a facility "from the early 1900's" until May 1998 (TAC ¶ 28).  The TAC further alleges in

numerous paragraphs that hazardous substances were placed on the Plaintiffs' properties "during the

time [the Defendants] operated the facilities" referenced in the TAC.  (*See* TAC ¶¶ 3-6, 14-18).

Thus, the Defendants assert, inter alia, that the Alabama statutes of limitations and/or the twenty-year

common law rule of repose bar the claims against them, because the Plaintiffs did not file suit until

April 8, 2005.

    In response to the time-barred arguments in Defendants' motions, Plaintiffs argue that the

Defendants waived the affirmative defense of repose by not raising it against Plaintiffs' earlier

complaints; that factual issues exist as to whether the twenty-year period of repose has run; and that

the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), Pub.

L. No. 96-510, 94 Stat. 2767 (codified as amended at 42 U.S.C. §§ 9601-9675 (2001)), preempts

both the Alabama statutes of limitations and rule of repose.  Plaintiffs' waiver argument lacks merit

because Plaintiffs' prior complaints lacked specificity as to relevant time periods as required by

Rules 8 and 10(b).  Specifically, Rule 10(b) requires that, in a multi-defendant/multi-plaintiff case

like this case, each plaintiff must separately identify an unlawful action taken by each defendant at

a recognizable point in time that caused the plaintiff to suffer an actual, identifiable injury.  *See* 5

Charles Alan Wright & Arthur B. Miller, *Federal Practice & Procedure:  Civil* 3D § 1248, 443-44

(2002).  The prior versions of the Plaintiffs' complaint lacked such specificity regarding these

Defendants.  The more substantial assertion, and the one the court will address first, is the interplay

7

of CERCLA with Defendants' assertion that Plaintiffs' claims are time barred.

## IV.  DISCUSSION

### A.    Legal Backdrop: CERCLA Preemption

Plaintiffs argue that CERCLA § 309, codified at 42 U.S.C. § 9658,[4] preempts both the

Alabama statute of limitations and the twenty-year rule of repose.  Section 9658 reads as follows:

(a)    State statutes of limitations for hazardous substance cases

(1)    Exception to State statutes

In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if *the applicable limitations period for such action (as specified in the State statute of limitations or under common law)* provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.

42 U.S.C. § 9658(a)(1) (emphasis added).  The "federally required commencement date" ("FRCD")

is "the date the plaintiff knew (or reasonably should have known) that the personal injury or property

damages . . . were caused or contributed to by the hazardous substance . . . concerned."  *Id.* §

9658(b)(4)(A).

Thus, if Alabama's "applicable limitations period" provides a "commencement date" earlier

than when the Plaintiffs knew or should have known of the property damage caused by the hazardous

substances alleged in the complaint, the FRCD controls.  In essence, § 9658 engrafts a discovery

requirement onto a state's "applicable limitations period."  *See Burlington Northern & Santa Fe Ry.*

---

[4] For simplicity, the court will refer to section 309 of CERCLA by referencing the codified section number only – § 9658.

*v. Poole Chem. Co.*, 419 F.3d 355, 362 (5th Cir. 2005).  Whether the "applicable limitations period" includes both the statutes of limitations and the rule of repose is a question to which the court now turns.

### 1.    Alabama Statutes of Limitations

The court finds that little doubt exists that CERCLA preempts Alabama's relevant statutes of limitations.  *See* Ala. Code § 6-2-34, 6-2-38.   In Alabama, the relevant statutes of limitations begin to run when the cause of action accrues, i.e., "when the first injury, however slight, occurr[ed], even though that injury may [have] later become greater or different."  *Free v. Granger*, 887 F.2d 1552, 1556-57 (11th Cir. 1989) (applying Alabama law).  The Alabama Supreme Court has long rejected the so-called "discovery rule" of accrual:   "'*Nor does plaintiff's ignorance of the tort or injury, at least if there is no fraudulent concealment by defendant, postpone the running of the statute until the tort or injury is discovered.*'" *Moon v. Harco Drugs, Inc.*, 435 So. 2d 218, 220 (Ala. 1983) (quoting *Kelly v. Shropshire*, 75 So. 291, 292 (Ala. 1917)) (emphasis in *Moon*).  CERCLA applies to claims that are "brought under State law for . . . property damages, which are [allegedly] caused or contributed to by . . . contaminant[s], released into the environment from a facility."  42 U.S.C. § 9658(a)(1).  CERCLA § 9658 preempts the Alabama statutes of limitations in such cases to the extent that Alabama's statutes of limitations provide a "commencement date" earlier than when the Plaintiffs knew or should have known of the property damage caused by the hazardous substances.

In other words, CERCLA does not alter Alabama's limitations period, but only imposes the FRCD to trigger commencement of that period.  The FRCD is defined as "the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages . . . were caused or

contributed to by the hazardous substance or pollutant or contaminant concerned."  42 U.S.C. § 9658(b)(4).  This definition mandates an "'objective standard for accrual' based not on what a plaintiff actually knew, but what he reasonably should have known."  *Fisher v. Ciba Specialty Chem. Corp.*, No. 03-0566, 2007 WL 2995525, at *16 (S.D. Ala. Oct. 11, 2007) (quoting *Freier v. Westinghouse Elec. Corp.*, 303 F.3d 176, 198 (2d Cir. 2002)).

Under the relevant Alabama statutes of limitations, a cause of action accrues on the date of the injury, not the date of discovery.  *See Becton v. Rhone-Poulenc*, 706 So. 2d 1134, 1135 (Ala. 1997).  The Alabama Supreme Court has stated that "[f]or purposes of an action based on . . . exposure to a hazardous substance, the date of the injury is the day on which the plaintiff was last exposed to the hazardous substance causing the injuries."  *Becton v. Rhone-Poulenc*, 706 So. 2d 1134, 1135 (Ala. 1997).  CERCLA, therefore, engrafts onto the Alabama statutes of limitations a discovery period, such that the limitations period would not begin to run until the plaintiff knew or should have known of the damage.

No Defendant actually argues that CERCLA, by its very terms, does not preempt Alabama's statutes of limitations that apply to Plaintiffs' causes of action.  However, U.S. Pipe does argue that § 9658 has no effect in this case because the Plaintiffs do not assert a claim under CERCLA.  U.S. Pipe cites several cases in support of its claim that "[f]ederal courts have recognized that it is inconsistent with the purposes and scope of CERCLA to apply Section 9658 where a plaintiff makes no claim under CERCLA itself."  (U.S. Pipe's Reply Br., doc. 183, 10) (citing *Knox v. AC&S, Inc.*, 690 F. Supp. 752, 757 (S.D. Ind. 1988); *Elec. Power Bd. of Chattanooga v. Westinghouse Elec. Corp.*, 716 F. Supp. 1069 (E.D. Tenn. 1988);  *In re Hanford Nuclear Reservation Litig.*, 780 F. Supp. 1551 (E.D. Wash. 1991)).  However, only one of the cases U.S. Pipe cites actually stands for

that proposition.  *See Knox v. AC&S, Inc.*, 690 F. Supp. 752, 757 (S.D. Ind. 1988).

In *Knox*, the court circumvented a plain reading of the statute in favor of the "whole statute" principle of statutory construction to conclude that § 9658 would apply only in situations "where a state cause of action exists in conjunction with a CERCLA cause of action."  690 F. Supp. at 757-58.  However, such an interpretation mischaracterizes and ignores the plain language of the statute itself, which states that it applies to "any action under State law."  42 U.S.C. § 9658(a)(1).  The court agrees with the treatment of *Knox* by the Ninth Circuit in *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139 (9th Cir. 2002):  "The holding in *Knox* . . . that the federally required commencement date of § 9658 is limited to situations 'where there is an underlying CERCLA action' . . . ignores the plain meaning of § 9658 . . . , [which] demonstrates that it was intended to reach . . . claims brought 'under state law.'" 311 F.3d at 1149 n.5 (internal citations omitted).

In the second case that U.S. Pipe cites for the idea that § 9658 only applies to CERCLA causes of action, the Eastern District of Tennessee adopted the "plain language" approach to statutory interpretation to conclude, contrary to U.S. Pipe's assertion, that § 9658 applies regardless of the absence of an underlying CERCLA cause of action.  *Elec. Power Bd. of Chattanooga v. Westinghouse Elec. Corp.*, 716 F. Supp. 1069, 1079 (E.D. Tenn. 1988)).  The Eastern District of Tennessee determined that § 9658 applied to "personal injury or property damages suits *arising under state law*" if the "damage was 'caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant' . . . 'released into the environment' . . . 'from a facility.'" *Id.* at 1079 (quoting 42 U.S.C. § 9658) (emphasis added).  Looking at the plain meaning of the statutory language, the court determined that the application of those statutory factors – not the presence of a concurrent CERCLA cause of action – would determine whether § 9658 applied.  *Id.* at 1080.

11

The Ninth Circuit, following the same plain language rationale, has abrogated the last case that U.S. Pipe cites in support of its argument that § 9658 should only apply where an underlying CERCLA cause of action has been asserted. *In re Hanford Nuclear Reservation Litig.*, 780 F. Supp. 1551 (E.D. Wash. 1991), *abrogated by O'Connor v. Boeing N. Am., In.*, 311 F.3d 1139, 1149 & n.5 (9th Cir. 2002). In *O'Connor*, the Ninth Circuit held that requiring that § 9658 apply only where a plaintiff makes a claim under CERCLA itself conflicts with the plain language of § 9658, which applies to claims "under State law." *Id.* at 1149. This court again agrees with the analysis and results in the Ninth Circuit's *O'Connor* decision.

Despite U.S. Pipe's argument to the contrary, the Alabama Supreme Court also has not required a CERCLA claim to be actually asserted for § 9658 to apply, but instead recognized that § 9658 applies "to situations where an underlying CERCLA claim has been made *or could exist*." *Becton v. Rhone-Poulenc, Inc.*, 706 So. 2d 1134, 1137 (Ala. 1997) (emphasis added); *see also Morgan v. Exxon Corp.*, 869 So. 2d 446, 450 (Ala. 2003) ("We need not decide whether the [plaintiffs] must actually assert a CERCLA claim, as the [defendants] contend . . . .").

Thus, this court finds that § 9658 does apply to the relevant Alabama statutes of limitations and engrafts upon Alabama's "applicable limitations period" a discovery period, such that the limitations period will have a "commencement date" when the Plaintiffs knew or should have known of the property damage caused by the hazardous substances alleged in the complaint.

## 2.    Alabama Rule of Repose

Defendants argue that CERCLA, by its very terms, preempts only statutes of limitations, not rules of repose. They base this argument in large part on a decision of the Fifth Circuit – the only federal court of appeals to specifically address the issue. *See Burlington N. & Santa Fe Ry. v. Poole*

*Chem. Co.*, 419 F.3d 355 (5th Cir. 2005).[5]

      **a.**    *Burlington* **Rule Against CERCLA Preemption of Rules of Repose**

In *Burlington*, the Fifth Circuit considered the applicability of § 9658 to the Texas statute of

repose for products liability claims, which barred claims against manufacturers not brought within

fifteen years of the date of sale, and decided that CERCLA did not preempt the statute of repose.

*Burlington*, 419 F.3d at 364. The court noted that "the differences between statutes of limitations

and statutes of repose are substantive, not merely semantic," and that CERCLA's plain language

reached only "statutes of limitations." *Id.* at 362. In that case, the storage tank that ruptured was

sold in 1988; the rupture that released several hundred thousand gallons of chemicals occurred in

2003; and plaintiffs brought suit in 2004. *Burlington*, 419 F.3d at 358-59. The defendant in that

case argued that § 9658 of CERCLA preempted the statute of repose and superimposed on it the

discovery rule of the "federally required commencement date," so that the period of repose did not

begin to run until it discovered the damage when the tank ruptured. *Id.* at 361.

The Fifth Circuit first noted that § 9658 provides that, for state law claims for personal injury

or property damage arising from exposure to hazardous substances released from a facility, "where

the applicable 'statute of limitations' provides a commencement date that is earlier than the . . .

[FRCD], the later federal date controls." *Burlington*, 419 F.3d at 361-62 (quoting 42 U.S.C. §

9658(a)(1)). Thus, the Fifth Circuit found that § 9658 "engrafts a discovery rule on state statutes of

---

[5] The Second Circuit did cite the *Burlington* opinion favorably in an analogous case to determine that the Delaware corporate wind-up statute, which limits the time after dissolution in which the former corporate entity may still be sued, was analogous to the Texas statute of repose discussed in *Burlington*. *Marsh v. Rosenbloom*, 499 F.3d 165, 180 (2d Cir. 2007). As such, the Second Circuit found that while CERCLA did affect the statute of limitations, it did not have any preemptive effect on the Delaware corporate wind-up statute. *Id.*

limitations, deferring the accrual of a cause of action until the plaintiff knew or . . . should have known of the facts giving rise to the cause of action." *Id.* (internal quotation marks omitted).

Turning to the question of rules of repose, the court examined the language of CERCLA and determined that the plain language of § 9658, which "states that it only preempts state law when the applicable state statute of limitations provides a commencement date which is earlier than the [FRCD]," does not apply to statutes of repose. *Id.* at 362 (internal quotation marks and citations omitted). After discussing some of the distinctions between a statute of limitations and a statute of repose, the court then acknowledged that "a statute of repose establishes a right not to be sued, rather than a right to sue." *Id.* at 363 (internal quotation marks omitted). Because it found "the differences between statutes of limitations and statutes of repose are substantive, not merely semantic," the court viewed the absence of any reference to rules of repose in § 9658 as persuasive. *Id.* at 362. Concluding that Congress, when amending CERCLA in 1986, drafted § 9658 so that the plain language of the section "refers to state statutes of limitations – not state statutes of repose," the court concluded that Congress did not intend to preempt statutes of repose. *Id.* at 364; *see also McDonald v. Sun Oil Co.*, 423 F. Supp. 2d 1114, 1127 (D. Or. 2006) ("This court agrees with the analysis of the *Burlington* court that there is a substantive difference between a statute of limitations and a statute of repose, and that . . . CERCLA extends only to statutes of limitations.").

### b. Conflicting Approaches of the Southern District of Alabama

The Eleventh Circuit has not addressed the issue. Two judges from the Southern District of Alabama have addressed the applicability of § 9658 preemption to the Alabama rule of repose and reached opposite conclusions. *German v. CSX Transp., Inc.*, 510 F. Supp. 2d 630, 633-34 (S.D. Ala. 2007) (DuBose, J.); *Fisher v. Ciba Specialty Chem. Corp.*, No. 03-0566, 2007 WL 2995525, at *15

(S.D. Ala. Oct. 11, 2007) (Steele, J.).

Judge DuBose, relying on *Burlington* and the differences between statutes of limitations and rules of repose, held that CERCLA does *not* preempt Alabama's common law rule of repose. *See German v. CSX Transp., Inc.*, 510 F. Supp. 2d 630, 633-34 (S.D. Ala. 2007) (DuBose, J.). Judge DuBose discussed at length Alabama case law distinguishing between the statute of limitations and the rule of repose. *Id.* at 632-33. Applying principles of statutory construction, the court concluded that the plain language of § 9658 did not mention repose and, therefore, did not preempt Alabama's rule of repose. *Id.* at 633.

Contrary to the *German* decision, another federal district judge from the Southern District of Alabama distinguished *Burlington* on the basis that Alabama's rule of repose is common law, not statutory as was the Texas statute of repose at issue in *Burlington*. *Fisher*, 2007 WL 2995525, at *15 (Steele, J.). Judge Steele determined that, while CERCLA does not mention preemption of any "statute" other than the statute of limitations, § 9658 does refer to the "limitations period . . . under common law." Thus, Judge Steele equated Alabama's rule of repose with a common law statute of limitations and refused to follow the *Burlington* decision. *See also Abrams v. Olin Corp.*, 248 F.R.D. 283, 290 (S.D. Ala. 2007) (Steele, J.) (following *Fisher*). This court sees no significance in the distinction between the codified rule of repose in Texas, as discussed in *Burlington*, and Alabama's common law rule of repose that has been recognized as far back as 1858. *See Ex parte Liberty Nat'l Life Ins. Co.*, 825 So. 2d 758, 763 (Ala. 2002) ("Since 1858, causes of action asserted in Alabama courts more than 20 years after they could have been asserted have been considered to have been extinguished by the rule of repose.") (citations omitted).

The decision in *Fisher*, equating the Alabama rule of repose with a common law statute of

limitations, posed a rhetorical question:  "What is Alabama's rule of repose if not a limitations period prescribed by state common law?"  2007 WL 2995525, at *15.  This question overlooks the historical and legal distinctions between statutes of limitation and rules of repose, which were discussed at length in *German* and recognized in a long line of Alabama jurisprudence.  *See, e.g., Am. Gen. Life & Acc. Ins. Co. v. Underwood*, 886 So. 2d 807, 812-14 (Ala. 2004); *Spain v. Brown & Williamson Tobacco Corp.*, 872 So. 2d 101, 127-29 (Johnstone, J., concurring specially); *Ex parte Liberty Nat'l Life Ins. Co.*, 825 So. 2d 758, 763-65 (Ala. 2002); *Tierce v. Ellis*, 624 So. 2d 553, 554-55 (Ala. 1993); *Boshell v. Keith*, 418 So. 2d 89, 91-92 (Ala. 1982).  Those distinctions demonstrate that equating the "applicable limitations period" in § 9658 with a common law rule of repose exceeds the plain language of the CERCLA preemption statute.

### c.   Eleventh Circuit Distinctions between Alabama Statutes of Limitation and Rules of Repose

While the Eleventh Circuit has not addressed the precise issue of CERCLA preemption of the Alabama rule of repose, it has provided detailed analysis of the differences between a limitations period and the rule of repose under Alabama law.  *See Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209, 1213-15 (11th Cir. 2001).  One issue the Eleventh Circuit addressed on interlocutory appeal in *Moore* was "[w]hether Alabama's 20 year common law rule of repose bars the Plaintiffs in this action from pursuing federal claims under 42 U.S.C. §§ 1981 & 1982."  *Id.* at 1213.  In holding that the rule of repose did not apply to – and, therefore, did not bar – federal civil rights claims, the court examined the background of Alabama's doctrine of repose.  That background provides a good foundation from which to examine the applicability of § 9658 to Alabama's rule of repose.

16

As noted by the Eleventh Circuit,

> Alabama's judicially created rule of repose serves to bar claims that arise out of events that are more than twenty years old. *Ex parte Grubbs*, 542 So. 2d 927, 930-31 (Ala. 1989). Alabama's rule of repose "'is similar to a statute of limitations, but [is] not dependent upon one,'" and has a greater breadth than any such statute, *McDurmont v. Crenshaw*, 489 So. 2d 550, 552 (Ala. 1986) (quoting *Boshell v. Keith*, 418 So. 2d 89, 91 (Ala. 1982)). Unlike a statute of limitations, "the only element of the rule of repose is time." *Boshell*, 418 So. 2d at 91. "[The rule of repose] is not affected by the circumstances of the situation, by personal disabilities, or by whether prejudice has resulted or evidence obscured." *Id.* . . . [A]ny claim in Alabama courts, brought more than twenty years after the time when it first could have been, is barred if the rule of repose applies. *Boshell*, 418 So. 2d at 91. The Alabama Supreme Court articulated the rationale for the rule as follows:
>
> > As a matter of public policy . . . it has long been the settled policy of this state . . . that antiquated demands will not be considered by the courts . . . . It is necessary for the peace and security of society that there should be an end of litigation, and it is inequitable to allow those who have slept upon their rights for a period of 20 years . . . to demand an accounting. *Snodgrass v. Snodgrass,* 176 Ala. 276, 58 So. 201, 201-02 (Ala. 1912).

*Moore*, 267 F.3d at 1213-14.

In rejecting Liberty National's argument that Alabama's rule of repose was integral to and, therefore, should be "borrowed" along with the statute of limitations pursuant to § 1988, the Eleventh Circuit in *Moore* further noted distinctions between repose and limitations periods:

> There is a distinct difference between statutes of limitations and statutes of repose. A statute of limitations normally governs the time within which legal proceedings must be commenced after the cause of action accrues . . . . *A statute of repose, however, limits the time within which an action may be brought and is not related to the accrual of any cause of action. Bradway v. Am. Nat'l Red Cross,* 992 F.2d 298, 301 (11th Circ. 1993) (alteration in original) (internal

17

quotation marks omitted).

267 F.3d at 1217-18.

The Eleventh Circuit acknowledged other distinctions and noted that statutes of limitations and rules of repose operate independently of one another.  Specifically, the court noted that statutes of limitation hinge upon the proper application of principles of accrual; the limitations period begins to run when the cause of action accrues, which is defined by the common law and relevant statutes of limitations and which may be unrelated to the date of the relevant act or omission.  *Id.* at 1218 (citing *Michael v. Beasley*, 583 So. 2d 245, 252 (Ala. 1991).  In contrast, the time period for the rule of repose does not begin to run when the action "accrues" according to the relevant statute of limitations, but rather when the relevant act itself occurs.  *Id.* (citing *Boshell v. Keith*, 418 So. 2d 89, 91 (Ala. 1982)).[6]

Because "[m]ost states have a plethora of statutes of limitations that apply to distinct causes of action," each with its own attendant definition of "accrual," repose may in *some* situations begin to run at the same time as the limitations period.[7]  *Moore*, 267 F.3d at 1218.  Nevertheless, "statutes of limitations and rules of repose apply in ways that are independent of one another.  Proper application of a statute of limitations is dependent upon principles of accrual.  The time period

---

[6] However, as discussed *infra*, the *Boshell* court specified that a "*claim* . . . brought more than twenty years after the time when it first *could have been* is barred" by the rule of repose. *Boshell*, 418 So. 2d at 91 (emphasis added).

[7] Though the relevant statutes of limitations in this case happen to define "accrual" as the date of the injury, which is for all practical purposes the same date the rule of repose starts to run, the court notes that "accrual" does not always coincide with the date of the relevant injury.  *See, e.g., Donaldson v. Williams*, 222 So. 2d 725, 726 (Ala. 1969) (deciding that in an action for fraud, "the ten years within which the bill could be filed did not begin to run until the discovery of the fraud, or when by the exercise of due diligence, the fraud might have been discovered").

begins to run when the cause of action arises and not necessarily on the date of the relevant act or omission," which is when the rule of repose begins to run. *Id.* As such, the Eleventh Circuit found that "the two doctrines are defined largely by reference to inconsistent rules of application" and that they "do not affect each other directly, as they are triggered by entirely distinct events." *Id.*

The Eleventh Circuit also noted that "Alabama's rule of repose may serve to bar actions that would have been permitted under Alabama's relevant statute of limitations" and that "actions permissible under the rule of repose may be barred by the shorter statute of limitations." *Id.* Thus, the Eleventh Circuit determined that the two doctrines are wholly separate and distinct legal doctrines that are in no way linked or interdependent. *Id.* at 1218-19; *see also Ex parte Grubbs*, 542 So. 2d 927, 930 (Ala. 1989) ("[Repose] is similar to, but broader than, a statute of limitations, *and is not affected by it, nor dependent upon it.*") (emphasis added) (citations omitted). The Alabama Supreme Court has also stated that "[t]his principle of repose or prescription is similar to a statute of limitations, but not dependent upon one, and broader in scope." *Boshell*, 418 So. 2d at 91.

### d.   Alabama Supreme Court Distinctions between Statutes of Limitation and Rules of Repose

The Eleventh Circuit's analysis in *Moore* delineates the differences and lack of interdependence between statutes of limitations and rules of repose under Alabama law. The distinctions discussed in *Moore* were further amplified and clarified by two Alabama Supreme Court opinions decided after that case. *See, e.e., Am. Gen. Life & Accident Ins. Co. v. Underwood*, 886 So. 2d 807, 812-14 (Ala. 2004); *Ex parte Liberty Nat'l Life Ins. Co.*, 825 So. 2d 758, 763-65 (Ala. 2002). Both cases discussed a possible point of confusion or lack of clarity left by the *Moore* decision upon which Defendants in this case heavily rely.

The Defendants point to statements quoted in *Moore* from the case of *Boshell v. Keith*, 418 So. 2d 89, 91 (Ala. 1982), that "the only element of the rule of repose is time" and that the repose period begins to run when the relevant action by the defendant occurs. *See Moore*, 267 F. 3d at 1214, 1218. However, the *Boshell* opinion itself and the entirety of Alabama law demonstrate that the twenty-year period of repose begins, not with the last act by the defendant, as urged here, but when all of the essential elements of the claim exist so that the plaintiff *could* file suit. *See Underwood*, 886 So. 2d at 812; *Spain v. Brown & Williamson Tobacco Corp.*, 872 So. 2d 101, 128 (2003) (Johnstone, J., concurring specially). Indeed the discussion of the operation of the rule of repose in Alabama cases "is couched in terms of the 'running of the period against *claims*,' 'absolute bar to unasserted *claims*,' 'lack of diligence in asserting *rights*,' 'sleeping upon their *rights*,' etc." and is accordingly based upon "the pre-existing right to assert a claim." *Boshell*, 418 So. 2d at 92. The twenty-year period of repose, therefore, "begins to run against claims the first time those claims *could* have been asserted, regardless of the claimant's notice of a claim." *Ex parte Liberty Nat'l Life Ins. Co.*, 825 So. 2d 758, 764 (Ala. 2002) (footnote omitted).

Thus, the twenty-year period of repose cannot begin to run until a claim arises, and a claim does not arise until all the elements, including damages, exist. *See Underwood.*, 886 So. 2d at 812-813 ("A suit on a tort claim may not be commenced until the defendant's tortious act proximately causes the plaintiff to suffer an actual injury."). Though some statutes of limitations, like those for fraud, begin running only after discovery of the injury, "plaintiff's lack of discovery or notice of the existence of the claim does not prevent the running of the 20-year period of the rule of repose, . . . which begins running as soon as all of the essential elements of the . . . claim so coexist that the plaintiff could file the action." *Spain*, 872 So. 2d at 129 (Johnstone, J., concurring specially); *see*

*Ex parte Liberty Nat'l,* 825 So. 2d at 764 n.2.

> **e.      Effect of § 9658 on Alabama Rule of Repose**

The question at issue in this case focuses on whether § 9658 preempts Alabama's rule of repose, which bars claims brought more than twenty years after they could have been filed, regardless of notice or discovery of the claim.  The answer to that question of statutory construction turns on the statutory language of CERCLA, which refers to "the applicable limitations period for such action (as specified in the State statute of limitations or under common law)."  42 U.S.C. § 9658.  In other words, did Congress intend this phrase to include only statutory and common law statutes of limitation, as the Fifth Circuit held in *Burlington,* 419 F.3d 355, 361-62 (5th Cir. 2005), *or* did Congress intend that the phrase also encompass rules of repose, as Judge Steele held in *Fisher,* No. 03-0566, 2007 WL 2995525, at *15 (S.D. Ala. Oct. 11, 2007)?

The statute itself, of course, should be the initial focus of the inquiry.  It refers to any "applicable limitations period," whether specified by a state's "statute of limitations" or "common law."  The statute itself defines "applicable limitations period" as the "period specified in a *statute of limitations* during which a civil action referred to in subsection (a)(1) of this section *may be brought.*"  42 U.S.C. § 9658(b)(2) (emphasis added).  Because the statute defines "applicable limitations period" as the statute of limitations, the common law preempted by the section should likewise be a statute of  limitations period specified by common law.[8]  Therefore, the cases holding

---

[8] Prior to codification by the states, limitations periods existed only at common law. Those surviving in state common law to this day are often referred to as "statutes of limitations" despite their non-statutory nature.  *See, e.g., Chevron U.S.A., Inc. v. Superior Court*, 44 Cal. Rptr. 2d 1009, 1012 (Cal. App. 1994) (discussing both a statutory statute of limitations, codified in the California Code of Civil Procedure, and a common law "statute" of limitations, developed through case law).

that CERCLA does *not* preempt a rule of repose are more persuasive because of the statutory

language and the inherent differences between the rule of repose and statute of limitations.

The statute of limitations and CERCLA are concerned with when a cause of action has

*accrued*, and when it "may be brought." Consequently, CERCLA modifies the "commencement

date" – the date the cause of action accrues and the statute of limitations begins running. The rule

of repose, on the other hand, operates *irrespective* of the date of accrual. *See German v. CSX*

*Transp., Inc.*, 510 F. Supp. 2d 630, 633-34 (S.D. Ala. 2007). "While a statute of limitations is a

procedural device that sets forth the time period within which an action is deemed to have accrued

and that is capable of being waived or tolled, a rule of repose is [a] substantive doctrine of the State,

eliminating a cause of action, irrespective of its date of accrual." *Moore v. Liberty Nat'l Ins. Co.*,

108 F. Supp. 2d 1266, 1275 (N.D. Ala. 2000). As the *Burlington* court noted, "a statute of repose

establishes a right not to be sued, rather than a right to sue." *Burlington N. & Santa Fe Ry. v. Poole*

*Chem. Co.*, 419 F.3d 355, 363 (5th Cir. 2005).

The Fifth Circuit's analysis of this issue in *Burlington* provides instruction. That decision

focused on the plain language of § 9658: "Literally, § 9658 states that it only preempts state law

when the applicable state *statute of limitations* 'provides a commencement date which is earlier than

the [FRCD]' – no mention of peremptory statutes or statutes of repose. The provision defines

'commencement date' as the 'date specified in a *statute of limitations* as the beginning of the

applicable limitations period.'" *Id.* at 362 (emphasis added). The definitions of "commencement

date" and "applicable limitations period" taken together counsel against application of CERCLA's

preemption to Alabama's rule of repose. Simply stated, a rule of repose is not the same as an

"applicable limitations period," because repose is not a statute of limitations and does not involve

22

a "commencement date" as § 9658 defines those terms.

This court must presume that Congress knew the difference between statutes of limitations and rules of repose and chose not to include repose within the plain language of § 9658. Furthermore, this court must "assume that in drafting this legislation, Congress said what it meant." *United States v. LaBonte*, 520 U.S. 751 (1997). The Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 502 U.S. 249, 253-54 (1992).

The concept of repose and the distinctions between statutes of limitation had been around for at least a century before the amendments to CERCLA in 1986. Indeed, the Alabama case that first adopted the twenty-year rule of repose in 1858 noted the "growing disposition to fix a period, beyond which human transaction shall not be open to judicial investigation, even in cases for which no statutory limitation has been provided. . . . By common consent, twenty years have been agreed on, as a time at the end of which many of the most solemn transactions will be presumed to be settled and closed." *McArthur v. Carrie's Adm'r*, 32 Ala. 75, 88-89, 1858 WL 470, at *9 (1858). Thus, Congress could not have been ignorant of the distinct concept of repose when it chose the precise language of § 9658 that did not include repose within its preemptive language. *See* 42 U.S.C. § 9658(a)(1) ("the applicable *limitations period* . . . as specified in the State statute of limitations or under common law . . . .") (emphasis added).

Following the lead of the Eleventh Circuit, this court acknowledges the distinct differences between statutes of limitations and Alabama's rule of repose. With those differences in mind, the court agrees with the Fifth Circuit and courts following *Burlington* and holds that the plain language of § 9658 does not encompass a rule of repose and, therefore, does not preempt Alabama's twenty-

23

year rule of repose.

**B.      Legal Analysis: Rule of Repose and Statutes of Limitations with CERCLA Commencement Date**

Having established that § 9658 of CERCLA engrafts a discovery rule onto the Alabama statute of limitations and that § 9658 does not preempt the Alabama rule of repose, the court turns now to the application of those legal principles to the facts of this case.

**1.      Alabama Rule of Repose**

Section 9658 of CERCLA does not preempt Alabama's rule of repose, which bars any claim brought twenty years after the actions giving rise to the claim, and, as such, some of the Plaintiffs' claims in the TAC may be barred by repose. *See Moore v. Liberty Nat'l Ins. Co.*, 108 F. Supp. 2d 1266, 1275 (N.D. Ala. 2000) (noting that if twenty years "from the moment the actions giving rise to the claim occurred" have elapsed, no claim can be pursued). Defendants argue that "the only element of the rule of repose is time." (Def. U.S. Pipe's Mem. Supp. Mot. Dismiss Pls.' TAC, doc. 163, 12); (Def. MW Custom's Mem. Supp. Mot. Dismiss Pls.' TAC, doc. 169, 9); (Tr. Defs.' Mots. Dismiss Am. Compl. 34:11-12, May 30, 3007). In so doing, they focus on the undisputed facts as contained in the TAC that their respective facilities ceased operations, and thus the last tortious act occurred, more than twenty years before the Plaintiffs filed suit. Therefore, they urge, the rule of repose bars all of Plaintiffs' claims against them.

If the court were to accept this argument based on one oft-repeated tagline that time is the only ingredient for repose, it would have to ignore a significant portion of the Alabama law of repose. Even the *Boshell* case, on which Defendants rely, speaks of the rule of repose barring "claims" not asserted after twenty years. *See Boshell*, 418 So. 2d at 92; *see also Spain*, 872 So. 2d

at 128 (Johnstone, J., concurring specially) (noting that the rule of repose bars "claims"). A claim does not exist without all its essential elements, including damages. *Underwood*, 886 So. 2d at 812-813.

These Defendants emphasize that their last *act* giving rise to Plaintiffs' complaint could not have occurred within twenty years of the filing of the complaint because, as the TAC states, MW Custom ceased operations in 1977, Phelps Dodge ceased operations October 26, 1983, and U.S. Pipe continuously emitted pollutants from its facility between 1961 and 2003. U.S. Pipe argues that its first emissions in 1961 triggered repose, which is not tolled by any continuing emissions that occurred within the repose period. *See Underwood*, 886 So. 2d at 813 ("[T]he continued collection of premiums after the payment of the first premium for each policy did not toll the running of the rule of repose. Because lack of notice is not sufficient to avert the application of the rule of repose, the plaintiff's lack of notice of the existence of his claims against [the defendants] did not prevent the running of the rule of repose."). However, it is not the first emissions but the first *injury* resulting from the emissions that triggers repose in this case. A claim does not exist without all its essential elements, including damages. *Underwood*, 886 So. 2d at 812-813.

While frequently the last act of a defendant may coalesce with all other elements of a claim, the court must examine more than just the cessation of actions by the Defendants to determine the applicability of the doctrine of repose. As noted in *Underwood*, all of the essential elements of Plaintiffs' claim must exist before the doctrine of repose applies. 886 So. 2d at 812-813. The TAC asserts causes of action for negligence, wantonness, nuisance, and trespass. For some of Plaintiffs' claims, when all the "essential elements" existed to create a claim cannot be ascertained from the face of the complaint. For example, some of the allegations refer to property damage caused by

25

migration of substances onto their property "as a result of air emissions and migration through the water." (*See* TAC ¶¶ 3 - 18).  In addition Classes 1 and 3 refer specifically  to Defendants MW Custom and Phelps Dodge, respectively, allowing substances to "migrate" to Plaintiffs' property. The TAC does not state when these emissions migrated onto their property, thus causing damage. The court, therefore, cannot determine when the Plaintiffs suffered any property damage caused by such migration.  Until the court has evidence as to when the contaminants migrated onto Plaintiffs' property, the court cannot determine whether all essential elements of Plaintiffs' claims existed more than twenty years before they filed suit.  Thus, as to the claims based on migration, Defendants MW Custom's and Phelps Dodge's mere cessation of operations does not invoke the twenty-year repose doctrine.

The TAC, however, also alleges claims based on the actual deposit of foundry sand on Class 4 Plaintiffs' property "during the time [the defendants] operated the facilities." (TAC ¶¶ 3-6, 8-14, 16-18).  Paragraphs 35-36 describe the practice of "the Defendants" concerning contaminated foundry sand, namely that they gave it away or sold it as fill material for residential and commercial properties.  Class 4 Plaintiffs are described as those who "have had waste substances . . . transported from . . . defendants' locations, and deposited on their property . . . ."  (TAC ¶ 44).[9]      The Class 4 claims against U.S. Pipe allege damages arising from the deposit of contaminated foundry sand onto Plaintiffs' properties between 1961 and 2003.   The TAC does not state precisely when these deposits occurred.  Thus, the court cannot determine when the Plaintiffs suffered any property

_____

[9] The class description includes "or deposited onto a neighboring property where any of the . . . materials migrated in any way onto the class member's property."  (TAC ¶ 44).  However, none of the named class representatives for Class 4 assert property damage based on migration; instead they plead that foundry sand "was placed" on their property by one or more defendants during the time they operated the facilities.

damage caused by such deposit.  Until the court has evidence as to when the contaminants were deposited onto Plaintiffs' property, the court cannot determine whether all essential elements of Plaintiffs' claims against U.S. Pipe existed more than twenty years before they filed suit.  To the extent Class 4 claims damages for any deposit occurring during U.S. Pipe's operations but more than twenty years before the filing of suit, such claims would be barred by the rule of repose.  However, because the TAC on its face does not indicate when the deposits occurred, U.S. Pipe's mere operation of the facility prior to 1985 does not trigger the twenty-year repose doctrine for the entire claim.

As to MW Custom and Phelps Dodge, the TAC asserts these Defendants ceased operations more than twenty years before the claim was filed on April 8, 2005.  The TAC does not allege that these Defendants "transported and deposited" any waste material on any Plaintiff's property *after* they ceased operations.[10]  As to the Class 4 claims against MW and Phelps Dodge, the TAC on its face supports a conclusion that claims existed more than 20 years before suit was filed.[11]  Therefore, the operation of the rule of repose bars those claims brought by the Class 4 Plaintiffs against MW Custom and Phelps Dodge that were "brought more than twenty years after the time when [they] could have been" brought.  *Moore*, 267 F.3d at 1213-14 (citing *Boshell*, 418 So. 2d at 91).

---

[10] In response to Defendant Phelps Dodge's Motion to Dismiss, the Plaintiffs offered contractual documents concerning the sale of the property.  Considering such evidence, as mentioned previously, would be beyond the scope of the court's motion to dismiss review.

[11] Under this analysis, the court need not decide the first moment at which the Plaintiffs could have brought their claims against MW Custom and Phelps Dodge, because the last act that could have caused damage, i.e., the last deposit of waste material with resulting damage, occurred more than twenty years before the Plaintiffs filed suit.

2.      **Alabama Statutes of Limitations with CERCLA Commencement Date**

The Defendants also assert that the relevant Alabama statutes of limitations bar all or part of the Plaintiffs' claims.  *See* Ala. Code §§ 6-2-34, 6-2-38.  In Alabama, the relevant statutes of limitations begin to run when the cause of action accrues, i.e., as soon as the injured party is entitled to maintain the action, regardless of whether the full amount of damages is apparent.  *Moon v. Harco Drugs, Inc.*, 435 So. 2d 218, 220 (Ala. 1983) (rejecting the so-called "discovery rule").  Under Alabama law, therefore, the statutes of limitations on the Plaintiffs' claims began "to run when the first injury, however slight, occurr[ed], even though that injury may [have] later become greater or different." *Free v. Granger*, 887 F.2d 1552, 1556-57 (11th Cir. 1989) (applying Alabama law).  The Alabama Supreme Court has refused to adopt the so-called "discovery rule," instead determining that a plaintiff's ignorance of the injury does not toll the running of the relevant statutes of limitations until the injury is discovered.  *Moon v. Harco Drugs, Inc.*, 435 So. 2d 218, 220 (Ala. 1983).

CERCLA § 9658 preempts the Alabama statute of limitations to the extent that Alabama's statute of limitations provides for accrual, the "commencement date," earlier than when the Plaintiffs knew or should have known of the property damage caused by the hazardous substances. As noted previously, CERCLA does not alter the length of Alabama's limitations period, but only imposes the FRCD to trigger commencement of that period.  The FRCD is defined as "the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages . . . were caused or contributed to by the hazardous substance or pollutant or contaminant concerned."  42 U.S.C. § 9658(b)(4).  This definition mandates an "'objective standard for accrual' based not on what a plaintiff actually knew, but what he reasonably should have known." *Fisher v. Ciba Specialty Chem. Corp.*, No. 03-0566, 2007 WL 2995525, at *16 (S.D. Ala. Oct. 11, 2007) (quoting *Freier v.*

*Westinghouse Elec. Corp.*, 303 F.3d 176, 198 (2d Cir. 2002)).

For the relevant Alabama statutes of limitations in this case, a cause of action accrues on the date of the injury, not on the date of discovery. *Becton v. Rhone-Poulenc*, 706 So. 2d 1134, 1135 (Ala. 1997) ("For purposes of an action based on . . . exposure to a hazardous substance, the date of the injury is the day on which the plaintiff was last exposed to the hazardous substance causing the injuries."). CERCLA, therefore, engrafts onto the Alabama statutes of limitations a discovery period based on the FRCD. Thus, even though the Alabama statutes of limitations for the causes of action in this case normally would accrue at the time of injury, the commencement date in CERCLA § 9658 engrafts a discovery period onto the Alabama limitations period, such that the statutes of limitations do not begin running until the plaintiff knew or reasonably should have known of the injury.

Courts generally evaluate when a plaintiff "reasonably should have known" by applying two factors: (1) "whether a reasonable person in Plaintiffs' situation would have been expected to inquire about the cause of his or her injury;" and (2) whether such inquiry "would have disclosed the nature and cause of plaintiff's injury so as to put him on notice of his claim." *Fisher v. Ciba Specialty Chem. Corp.*, No. 03-0566, 2007 WL 2995525, at *16 (S.D. Ala. Oct. 11, 2007) (quoting *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002)). Notwithstanding this objective standard of accrual, "continuous torts" may toll the Alabama statutes of limitations. *Moon v. Harco Drugs, Inc.*, 435 So. 2d 218, 221 (Ala. 1983). Even where the statutes of limitations are tolled, however, a plaintiff can recover only for injuries sustained during the limitations period. *Am. Mut. Liab. Ins. Co. v. Agricola Furnace Co.*, 183 So. 677, 679 (Ala. 1938).

Despite Plaintiffs' contentions, the trespass claims of Classes 1, 2, and 3 do not constitute a "continuing tort." Alabama courts will find that a trespass constitutes a continuing tort where a

*structure* is maintained on another's land. *See Ala. Power Co. v. Gielle*, 373 So. 2d 851, 854 (Ala. 1979). Maintaining a building on another's land differs from the situation at bar, where unremediated emissions from the Defendants' facilities have, allegedly, settled and remained on the Plaintiffs' properties. Plaintiffs did not cite, and the court could not find, any case applying the continuous trespass situation to an analogous set of facts. In fact, one district court in this state, applying Alabama law, has held the exact opposite, stating that the continued presence and passive migration of contaminants did not constitute a continuing trespass. *See LaBauve v. Olin Corp.*, 231 F.R.D. 632, 656 (S.D. Ala. 2005).

Consequently, the Alabama statutes of limitations, as modified by CERCLA, have not been tolled by any continuous tort. As such, they will bar recovery for some of Plaintiffs' claims. The statute of limitations will bar recovery for any damage resulting from the Defendants' negligence, wantonness, and nuisance about which the Plaintiffs knew or should have known more than two years prior to the complaint, i.e., on or before April 8, 2003. Ala. Code § 6-2-34. The statute of limitations will also bar recovery for any trespasses about which Plaintiffs knew or should have known more than six years prior to the complaint, i.e., on or before April 8, 1999. Ala. Code. § 6-2-38. At this stage of the proceedings, however, the court does not have before it any evidence on which to determine when the Plaintiffs knew or should have known the relevant facts allegedly giving rise to their causes of action. Accordingly, the court will deny the motions to dismiss on the basis of the statute of limitations at this time.

## C.    Failure to State Claims Upon Which Relief May Be Granted

In addition to challenging the timeliness of the Plaintiffs' claims, the Defendants also argue that the TAC fails to adequately allege the substantive claims of nuisance, trespass, and wantonness.

30

1.      **Claims Against U.S. Pipe**

a.      **Count Three: Nuisance**

The Plaintiffs allege that the Defendants' actions created and maintained a nuisance under Alabama law that damaged the Plaintiffs' use and enjoyment of their property and that such damage would affect an ordinary, reasonable person.  (TAC ¶¶ 56-64).  U.S. Pipe argues that Plaintiffs in Class 2 cannot state a claim for private nuisance, because U.S. Pipe acquired a prescriptive right to maintain the alleged nuisance.  U.S. Pipe acknowledges that further factual development will be necessary to determine whether it acquired a prescriptive right as to the Class 4 Plaintiffs and, therefore, does not move to dismiss the Class 4 Plaintiffs' nuisance claim.

The right to maintain a private nuisance may be acquired by prescription.  *Stouts Mountain Coal & Coke Co. v. Bullard*, 70 So. 2d 172, 174 (Ala. 1915).  To establish a prescriptive right, "the use must not only be open, adverse, and continuous, etc., but with the knowledge and acquiescence of the person whose right is invaded . . . [a]nd the use must be such as to produce a uniform result during the period of adverse claim or holding."  *Id.*  "A cause of action for a private nuisance of like kind and degree, continuous in character, endured for ten years without remedial action, is forever barred by prescription."  *Beam v. Birmingham Slag Co.*, 10 So. 2d 162, 165 (Ala. 1942).

In opposition to U.S. Pipe's prescription defense, Plaintiffs argue that the "Defendant has not proven that the alleged prescription was continuous and maintained in the same manner for the 10 year period."  (Pls.' Resp. Mots. Dismiss TAC, doc. 180, 39).  Defendant need not; a motion to dismiss focuses on the Plaintiffs' complaint, the factual allegations of which must be accepted as true. Here, the TAC itself alleges that "the defendants regularly emitted and discharged" the hazardous materials "during the entirety of the time that each defendant operated the facility or facilities." (TAC

¶¶ 39, 43).  Additionally, in describing U.S. Pipe, the TAC states that the "contamination . . . [was] deposited on their property continuously" and "the hazardous substances . . . were deposited continuously while U.S. Pipe & Foundry, and its predecessors operated the facility."  (TAC ¶ 20). Nevertheless, a defense grounded on the passage of time must be judged from the date when the harmful results occurred, and a nuisance cause of action does not arise until the harmful consequences are felt.  *City of Birmingham v. Leberte*, 773 So. 2d 440 (Ala. 2000) ("For an abatable nuisance the cause of action does not arise until the harmful consequences occur, and each occurrence or recurrence of such damages constitutes a separate cause of action.");  *City of Clanton v. Johnson*, 17 So. 2d 669, 672 (Ala. 1944) (same);  *Union Cemetery Co. v. Harrison*, 101 So. 517 (Ala. 1924) ("In cases of damages by nuisance it is considered that the injurious consequences resulting from the nuisance, rather than the act which produces the nuisance, is the cause of action, and hence it is held that the cause of action does not arise until harmful consequences occur.").

The TAC does not provide information regarding how long Plaintiffs knew of the nuisance, nor does it provide information regarding whether the harmful results were "of like kind and degree" throughout the period of the emissions.  *See Beam*, 10 So. 2d at 165.  As the Alabama Supreme Court noted, to establish a prescriptive right, "the use must not only be open, adverse, and continuous, etc., but *with the knowledge and acquiescence of the person whose right is invaded* . . . [a]nd the use must be such as to produce a uniform result during the period of adverse claim or holding." *Bullard*, 70 So. 2d at 174 (Ala. 1915) (emphasis added).    Should such information become evident, a claim of prescription may be viable; without such information, however, the Defendants motion to dismiss on prescriptive grounds must be denied.

#### b.      Count Four: Trespass

The Plaintiffs allege that the Defendants knew or should have know that their actions and inactions would lead to the release of contaminants beyond the bounds of Defendants' properties and that such contaminants would foreseeably invade Plaintiffs' properties.  (TAC ¶¶ 65-70).  U.S. Pipe argues that the trespass claims of the Class 4 Plaintiffs must be dismissed for failure to state a claim because the TAC does not allege that Plaintiffs did not consent to the placement of foundry sand on their properties.

Alabama defines trespass as the "entry on the land of another without express or implied authority." *Cent. Parking Sys. v. Steen*, 707 So. 2d 226, 228 (Ala. 1997) (quoting *Foust v. Kinney*, 80 So. 474, 475 (Ala. 1918)).  No trespass occurs if a plaintiff has consented to the invasion upon his property:

> An action for trespass *quare clausum fregit* will not lie unless plaintiff's possession was intruded upon by defendant without his consent, even though consent may have been given under a mistake of facts, or procured by fraud, or unless he entered under a license for some particular purpose and went beyond that purpose.

*Martin v. Fid. & Cas. Co.*, 421 So. 2d 109, 111 (Ala. 1982) (quoting *Alexander v. Letson*, 7 So. 2d 33, 36 (Ala. 1942)).  Even implied authority to enter onto another's land negates the possibility of a trespass.  *Cent. Parking*, 707 So. 2d at 228.

Plaintiffs argue (1) that lack of consent "is not even an element of the claim;" and (2) that "[n]one of the Plaintiffs consented [to] the disposal of hazardous waste on their property."  (Pls.' Resp. Mots. Dismiss TAC, doc. 180, 35).  Plaintiffs also point out that a trespass "may be committed by discharging foreign polluting matter at a point beyond the boundary of such realty."  (Pls.' Resp. Mots. Dismiss TAC, doc. 180, 36) (quoting *Borland v. Sanders Lead Co.*, 369 So. 2d 523, 527 (Ala.

1979)).  Contrary to Plaintiffs' first argument, "[i]ntrusion upon land possessed by a plaintiff, without

his consent, *is* an essential element of trespass."  *Harding v. Bethesda Reg'l Cancer Treatment Ctr.*,

551 So. 2d 299, 301 (Ala. 1989) (citation omitted) (emphasis added).

The issue of consent is not a question of fact that must wait for a later stage of this case.  For

purposes of the motions to dismiss currently before the court, this court must "accept as true the facts

stated in the complaint and all reasonable inferences therefrom."  *Jackson v. Okaloosa County*, 21

F.3d 1531, 1534 (11th Cir. 1994); *see also Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th

Cir. 2006) (citing *Stephens v. Dep't of Health and Human Servs.*, 901 F.2d 1571, 1573 (11th Cir.

1990)) ("On a motion to dismiss, the facts stated in the . . . complaint and all reasonable inferences

therefrom are taken as true.").  However, the court must draw "all reasonable inferences . . . in favor

of the Plaintiffs."  *Long v. Slaton*, 508 F.3d 576, 579 (11th Cir. 2007) (citing *Snider v. Jefferson State

Cmty. Coll.*, 344 F.3d 1325, 1327 (11th Cir. 2003).

Plaintiffs allege that Defendants engaged in "offering and disposing of their spent foundry

sand" and that Defendants "simply g[a]ve it away . . . [and] sold [it] as fill material." (TAC ¶ 36).

Thus, not only have the Class 4 Plaintiffs failed to allege that the deposit of the spent foundry sand

on their properties was without their consent, but also the only reasonable inference from Plaintiffs'

choice of language – giving away, selling, and offering – is that Plaintiffs accepted as free or actually

purchased the foundry sand, both of which would constitute consent to put the sand on their

properties.  Even without drawing this reasonable inference, the TAC clearly does not allege that the

placement of the foundry sand on the Class 4 Plaintiffs' properties was without their consent, an

essential element of the claim whose absence dooms Plaintiff's trespass claim.

Whether the sand contained contaminants is a question wholly immaterial to the adequacy of

the consent given for its deposit on the Plaintiffs' properties.  These circumstances are not the type where a defendant with consent "for some particular purpose . . . went beyond that purpose."  *See Martin v. Fid. & Cas. Co.*, 421 So. 2d 109, 111 (Ala. 1982).  The alleged contamination with hazardous substances, even if fraudulently concealed by Defendants, does not negate the Plaintiffs' consent.  Even consent procured by fraud will negate a trespass claim.  *See id.* at 111.

In citing to *Borland*, Plaintiffs imply that their trespass claim may proceed because of the deposit of contaminated sand "beyond the boundary" of the Plaintiffs' properties.  Indeed, in the TAC, the definition of Class 4 includes property owners who allegedly "had waste substances . . . deposited onto a neighboring property where any of the above-referenced materials migrated in any way onto the class member's property."  (TAC   ¶ 44).  The problem, however, is that *none* of the named Plaintiffs allege such an injury; instead, each Plaintiff seeking to represent the interests of Class 4 alleges that contaminated sand was deposited directly on his or her property – not on a neighboring property.[12]  The Eleventh Circuit has stated that "[i]t is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to one of many claims he wishes to assert.  Rather, . . . a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim."  *See Wooden v. Bd. of Regents*, 247 F.3d 1262, 1288 (11th Cir. 2001).  The named Class 4 Plaintiffs, therefore, do not have standing to represent any person alleging "migration" from a neighboring property.

Having determined that the TAC does not contain factual allegations to support the assertion that the placement of foundry sand on their properties was without their consent, and having

---

[12] The court has not certified a class and the only claims before it are those asserted by the named Plaintiffs, albeit purportedly on behalf of a class.

determined that no named Plaintiff in Class 4 alleged "migration" from the deposit of sand on neighboring properties, the court will dismiss the trespass claims of Class 4.

### c.  Count Two: Wantonness

The Plaintiffs allege that the Defendants knew or should have known that their actions and inactions would have an adverse, injurious effect on the Plaintiffs and the class and, as such, that the Defendants' conduct constituted wantonness – a reckless disregard for the Plaintiffs' property. (TAC ¶¶ 50-55).  U.S. Pipe argues that Plaintiffs' wantonness claim in Count Two must be dismissed for failure to state a claim upon which relief may be granted.  The gist of U.S. Pipe's argument is that Plaintiffs' wantonness claim is a "formulaic recital" of the elements of wantonness that includes no "facts" upon which the claim is based.

Under Alabama law, wantonness is "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others."  Ala. Code § 6-11-20(b)(3).  The Alabama Supreme Court has described wantonness as "the conscious doing of some act, or the omission of some duty, under knowledge of existing conditions and while conscious that from the doing of such act or omission of such duty injury will likely or probably result."  *Ridgeway v. CSX Transp., Inc.*, 723 So. 2d 600, 608 (Ala. 1998).  "[K]nowledge of a condition and consciousness of the danger may be inferred" under some circumstances, but negligence does not equal wantonness.  *Salter v. Westra*, 904 F.2d 1517, 1525 (11th Cir. 1990).

The TAC pleads wantonness as follows:

> 51.  In breaching the duties described above, the Defendants acted in a wanton, wilfull [*sic*], and reckless manner.
> 52.  The Defendants knew or should have known the danger to Plaintiffs and the class created by Defendants' conduct, practices, actions, and inactions.

36

53.  The Defendants knew or should have known of the likely or probable harm, damage, and injury their conduct, practices, actions, and inactions would have on and/or cause Plaintiffs and the class.

54.  The Defendants' conduct, practices, actions, and inactions evidence defendants' reckless disregard for the Plaintiffs' property and the class as a whole.

Viewed in isolation, these paragraphs state only legal conclusions, just as U.S. Pipe argues.  Plaintiffs' response that the court must accept these four paragraphs as true is simply wrong.  The court must accept *factual* allegations as true for purposes of a motion to dismiss, but need not give any deference to bare legal conclusions.  As the Supreme Court stated, "[a]lthough for purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

On the other hand, the TAC includes sixty-eight paragraphs in addition to the four quoted above, and some of those, particularly those under the heading "Factual Allegations," do include facts supporting Plaintiffs' wantonness claim.  For instance, Plaintiffs allege that "the Defendants discharged oil, fluids, sand, slag, and/or other material" contaminated with "lead, cadmium, zinc, chromium, arsenic, and/or other dangerous and hazardous substances" into the sewer system and waterways in and around Anniston, Alabama.  (TAC ¶¶ 37-38).  Plaintiffs also allege that the Defendants "regularly emitted and discharged waste materials, lead, soot, foundry sand, dust, smoke, fumes, particulate, contaminants, pollutants and other dangerous and hazardous materials and substances into the air."  (TAC ¶ 39).  Class 4 Plaintiffs allege that "the Defendants regularly used spent foundry sand as an absorbent to clean up oil and other fluid spills . . . [leading] to the contamination of the sand" and that some of the Defendants gave away or sold this spent foundry sand

as fill material without any warnings to the recipients.  (TAC ¶¶ 35-36).  Specifically, named Class 4 Plaintiffs allege that U.S. Pipe transported and deposited spent foundry sand, contaminated with hazardous substances, onto their property.  (TAC ¶ 4, 13, 14, 16, 18).

The Plaintiffs assert that U.S. Pipe knew the spent foundry sand and emissions into the air and water were contaminated and that, by allowing the contaminants to be deposited onto the Class 4 Plaintiffs' properties and to be emitted with the reasonable certainty that they would come to rest on the other Plaintiffs' properties, U.S. Pipe acted in reckless disregard of the danger those contaminants posed to the Plaintiffs.  Taking the factual allegations as true and drawing all reasonable inferences in favor of the Plaintiffs, the court finds that allegations in the TAC are sufficient to satisfy the elements of wantonness at this stage.  *See Ridgeway v. CSX Transp., Inc.*, 723 So. 2d 600, 608 (Ala. 1998) ("[K]nowledge of a condition and consciousness of the danger may be inferred.").  Accordingly, the court will deny U.S. Pipe's motion to dismiss the wantonness claims against it.

### 2.   Claims Against FMC, United Defense, and Phelps Dodge

FMC, United Defense, and Phelps Dodge do not specifically attack individual causes of action, but instead maintain that the TAC as a whole is deficient as to them because the TAC includes no specific allegations of conduct by FMC, United Defense, or Phelps Dodge.  Looking first at the allegations in the TAC asserted by Class 1 against FMC and United Defense, the Plaintiffs allege as follows: FMC and United Defense operated a foundry in Anniston, Alabama from 1994 until May 1998 (TAC ¶ 28); as part of their manufacturing operations during that period, the foundry owned by FMC and United Defense discharged and/or emitted into the air and surrounding waterways contaminated wastewater, oil, fluids, sand, dust, slag, lead, soot, foundry sand, dust, smoke, fumes, particulate contaminants, pollutants, and other materials (TAC ¶¶ 37-39, 44); that as a foreseeable

direct result of those emissions, hazardous materials came to rest on Plaintiffs' properties (TAC ¶¶ 39-40); and these hazardous materials remain on Plaintiffs' properties. (TAC ¶ 41). The putative class of Plaintiffs who bring causes of actions for negligence, wantonness, nuisance, and trespass for these alleged activities include those "current owners of properties located within 10,000 feet of the foundries owned" by FMC and United Defense. (TAC ¶ 44). These allegations are sufficient to support the negligence, wantonness, nuisance, and trespass claims of the Class 1 Plaintiffs against Defendants FMC and United Defense.

Similarly, Class 3 allege that Phelps Dodge operated foundries and smelters in Anniston, Alabama from 1963 until October 26, 1983 (TAC ¶ 30); that Phelps Dodge's facilities discharged and/or emitted into the air and surrounding waterways contaminated wastewater, oil, fluids, sand dust, slag, lead, soot, foundry sand, dust, smoke, fumes, particulate contaminants, pollutants, and other materials (TAC ¶¶ 37-39, 44); that as a foreseeable direct result of those emissions, hazardous materials came to rest on Plaintiffs' properties (TAC ¶ 39-40); and that these hazardous materials remain on Plaintiffs' properties. (TAC ¶ 41). Causes of action for negligence, wantonness, nuisance, and trespass based on these allegations are brought on behalf of "current owners of properties located within 10,000 feet of the foundries owned and/or operated by defendant Phelps Dodge." (TAC ¶ 44). These allegations are sufficient to support the negligence, wantonness, nuisance, and trespass claims of the Class 3 Plaintiffs against Defendant Phelps Dodge.

The court has some difficulty determining whether Class 4 seeks to bring claims against FMC, United Defense, and Phelps Dodge for the deposit of contaminated foundry sand directly onto the Plaintiffs' properties. Class 4 is defined to include all property owners who had waste substances "transported from" *any* of the foundries, including those owned and/or operated by FMC, United

Defense, and Phelps Dodge.  (TAC ¶ 44).  In fact, the TAC explicitly states in some paragraphs that Class 4 brings claims against FMC and United Defense (TAC ¶ 28) and Phelps Dodge (TAC ¶ 30) Yet, the factual allegations ostensibly limit claims for the transportation and deposit of contaminated foundry sand to U.S. Pipe and MW Custom.  (TAC ¶ 36) ("This activity was undertaken by Defendants U.S. Pipe & Foundry and MW Custom Papers, who are the defendants named in Class 4.  Only the plaintiffs identified as representatives of Class 4 bring this claim against these defendants.").  Furthermore, none of the named Plaintiffs representing Class 4 alleges that FMC, United Defense, or Phelps Dodge placed contaminated foundry sand on his or her property.

Nonetheless, some of the named Class 4 Plaintiffs allege that "one of the defendants listed as defendants in Class 4" deposited spent foundry sand onto their property. (*See* ¶¶ 3, 5, 6, 11, 12). Furthermore, FMC, United Defense, and Phelps Dodge are listed as Class 4 Defendants in ¶ 44. Pursuant to the liberal pleading requirements of Rule 8(a), "general use of the term 'defendants' may be sufficient." *Peters v. Amoco Oil Co.*, 57 F. Supp. 2d 1268, 1276 (M.D. Ala. 1999) (finding that "for Plaintiffs' claims of trespass, nuisance, . . . negligence, gross negligence, and strict liability, Plaintiffs' use of the general term 'Defendants' is sufficient").  In deciding whether the general use of the term "defendant" constituted fair notice under Rule 8, the Eleventh Circuit has held that "[w]hen multiple defendants are named in a complaint, the allegations can be and usually are to be read in such a way that each defendant is having the allegation made about him individually." *Crowe v. Coleman*, 113 F.3d 1536, 1529 (11th Cir. 1997).  Thus, despite the murkiness of the Class definitions,[13] the court reads the factual allegations of the TAC as true, and reasonably infers from the definition of Class 4 in ¶ 44 of the pleadings that FMC, United Defense, and Phelps Dodge are

---

[13] The court presumes this murkiness will be cleared through discovery.

defendants in the Class 4 claims.  Accordingly, the court determines that the pleadings – most notably the class definitions in ¶ 44, which specifically refer to Defendants FMC, United Defense, and Phelps Dodge – are sufficient to put Defendants FMC, United Defense, and Phelps Dodge on notice as to the claims asserted against them.  As such, the factual allegations in the TAC, taken as true, are sufficient to sustain the Class 4 claims of negligence, wantonness, and nuisance against FMC, United Defense, and Phelps Dodge.

However, the court notes that no Class 4 claim for contamination resulting from "migration" of hazardous substances from spent foundry sand deposited on a neighbor's property by FMC, United Defense, or Phelps Dodge can lie because no named Plaintiff has alleged that injury.  Accordingly, to the extent Plaintiffs purport to bring any claims against FMC, United Defense, or Phelps Dodge for contamination of their properties resulting from the migration of contaminated foundry sand that had been deposited onto a neighboring property, those claims will be dismissed for lack of standing.

### 3.    Claims Against MW Custom

Like FMC, United Defense, and Phelps Dodge, MW Custom does not identify specific pleading deficiencies within each count of the TAC, but maintains that the entire complaint is deficient because it fails to identify specific acts by MW Custom.  As with the other Defendants, the TAC alleges the following regarding MW Custom: that MW Custom and its predecessors operated several identified foundries from the early 1900s to no later than 1977 (TAC ¶ 25); that MW Custom's facilities emitted or discharged the sundry materials previously described (TAC ¶¶ 37-39); that as a foreseeable direct result of those emissions, hazardous materials came to rest on Plaintiffs' properties (TAC ¶ 39-40); and that those materials have remained on Plaintiffs' property since their deposit there (TAC ¶ 41).  Causes of action based on these allegations are brought on behalf of

41

"current owners of properties located within 10,000 feet of the foundries owned and/or operated by . . . MW Custom." (*Id.* ¶ 44).   Rule of repose and statute of limitations arguments aside, these allegations are sufficient to support the claims of the Class 1 Plaintiffs.   Therefore, the motions to dismiss will be denied as to the Class 1 claims against MW Custom for negligence, nuisance, trespass, and wantonness.

As discussed *supra*, the Alabama rule of repose bars Class 4's claims against MW Custom based upon MW's Custom's alleged transportation and deposit of contaminated sand onto Plaintiffs' properties.

**D.      Lack of Subject Matter Jurisdiction**

U.S. Pipe argues that this court lacks subject matter jurisdiction over Count Five of the TAC. In that count, Plaintiffs request an injunction directing Defendants to (1) cease the conduct described in the complaint and (2) remove contaminated soil from the Plaintiffs' properties.   U.S. Pipe argues that the request argument is moot because it ceased operations in 2003 and is already engaged in removal of contaminated soil.   In addition, U.S. Pipe contends that section 113(h) of CERCLA, codified at 42 U.S.C. § 9613(h), deprives the court of jurisdiction over any challenge to an existing agreement between the EPA and some Defendants in this action as to the cleanup of contamination in residential yards in Anniston.

As stated earlier, when a party challenges the court's jurisdiction, it may consider matters beyond the complaint.   *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) ("[W]hen a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1), the district court is free to independently weigh facts, and may proceed as it never could under Rule 12(b)(6).").   The court

finds U.S. Pipe's argument that it has already ceased the conduct alleged in the TAC persuasive. The activities in which U.S. Pipe allegedly engaged include disposing of contaminated foundry sand (TAC ¶ 36); discharging contaminated wastewater, oil, fluids, sand dust, slag, and other materials (TAC ¶¶ 37-38); and emitting waste materials, lead, soot, foundry sand, dust, smoke, fumes, particulate, contaminants, pollutants, and other materials (TAC ¶ 39). Plaintiffs allege that these activities were "part of the Defendants' manufacturing operations." (TAC ¶¶ 34, 37-39). Plaintiffs allege that U.S. Pipe operated the facility at issue from 1961 to 2003. (TAC ¶ 20). Given that U.S. Pipe is no longer engaged in "manufacturing operations" as of 2003, the TAC fails to allege that these activities continue. Accordingly, the first half of Plaintiffs' requested injunction is moot. The same rationale applies to Plaintiffs' request for cessation of activities against all Defendants. The TAC alleges that all Defendants have now ceased operations. Accordingly, Plaintiffs' request for an injunction directing Defendants to cease the conduct described in the complaint will be dismissed as moot.

U.S. Pipe's remaining arguments rely upon the Section 122 Administrative Agreement and Order on Consent for Removal Action ("AOC") entered into between the EPA and certain Defendants in this action, including U.S. Pipe, pursuant to sections 104, 106(a), 107, and 122 of CERCLA, codified at 42 U.S.C. §§ 9604, 9606(a), 9607, and 9622 respectively. In the AOC, these Defendants "agreed to perform certain sampling and cleanup of residential properties." (*See* Order, doc. 76, 2). Section 113(h) of CERCLA, codified at 42 U.S.C. § 9613(h), however, provides that "[n]o federal court shall have jurisdiction under Federal law . . . to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a)

of this title."  42 U.S.C. § 9613(h).

The Eleventh Circuit Court of Appeals has interpreted CERCLA to mean that "section 113(h) . . . denies federal courts jurisdiction to hear challenges to both removal and remedial action taken under CERCLA until those actions are complete."  *Broward Garden Tenants Assoc. v. EPA*, 311 F.3d 1066, 1071 (11th Cir. 2002).  "If a complaint seeks to have the court modify or replace the remedial plan . . ., it clearly is a challenge to the selected remedial plan."  *Id.*

Plaintiffs argue that "the AOC does not encompass the entire clean-up actions and other injunctive actions that these particular class [*sic*] of Plaintiffs propose must be done to stop the damages that have and are continuing to occur.  Furthermore, it does not likely encompass the entire class of Plaintiffs" (Pls.' Resp. Mots. Dismiss TAC, doc. 180, 42); and "[e]ven if the AOC is sufficient to satisfy the EPA's requests, it is not sufficient to satisfy the claims made by Plaintiffs." (Pls.' Resp. Mots. Dismiss TAC, doc. 180, 43).  That may be true; nonetheless, if this court were to order remedial action prior to full performance of the AOC, it would be modifying what the EPA considers sufficient.  In essence, therefore, Plaintiffs challenge the sufficiency of the AOC, and such challenge goes beyond this court's jurisdiction.

The court recognizes, however, that not all Defendants are signatories to the AOC and perhaps not all of the Plaintiffs' properties are covered by the AOC.  The court does not have before it evidence sufficient to determine to what extent each Defendant should be dismissed from Count 5.  The court, thus, reserves ruling on the motion to dismiss the claim for injunctive relief as to the property clean-up.  However, because this court should address challenges to its jurisdiction as soon as possible, counsel are ordered to meet and confer and, within thirty days from the entry of the order

accompanying this opinion, present to the court a joint proposal for timely addressing this issue.

## V.  CONCLUSION

For the reasons stated above, the court concludes that it must DENY without prejudice the Defendants' motions to dismiss on the basis of Alabama's statutes of limitations and common law rule of repose; some of Plaintiffs' claims may be barred under one or both of these doctrines, but the court cannot determine which ones without evidence unavailable at this stage of the proceedings. However, the court will GRANT the motions to dismiss the Class 4 claims asserted against MW Custom and Phelps Dodge as barred by the rule of repose.

The motion to dismiss the Class 2 claims against U.S. Pipe for nuisance will be DENIED without prejudice, because the factual allegations in the TAC do not establish prescription.

The motion to dismiss the claims against the Defendants for wantonness will be DENIED, because the factual allegations, taken as true, and all reasonable inferences, drawn in favor of the Plaintiffs, are sufficient to support a claim of wantonness.

The court will GRANT the motion to dismiss the Class 4 trespass claims against all Defendants, because the TAC does not assert that the placement of foundry sand on the Plaintiffs' properties was without their consent.  The court will DENY the motion to dismiss the Class 1, 2, and 3 trespass claims against Defendants FMC, United Defense, Phelps Dodge, and MW Custom, because the factual allegations, taken as true, and all reasonable inferences, drawn in favor of the Plaintiffs, are sufficient to support a claim of trespass.

The court will DENY the motion to dismiss the negligence and nuisance claims asserted against all Defendants, because the factual allegations, taken as true, and all reasonable inferences,

drawn in favor of the Plaintiffs, are sufficient to support claims of negligence and nuisance.

The court will GRANT the motion to dismiss Class 4's claims against FMC, United Defense, and Phelps Dodge for damage to their properties resulting from the migration of contaminated foundry sand from deposited sand on neighboring property, because no Class 4 Plaintiff has alleged that injury and, thus, no Class 4 Plaintiff has standing to assert the claim on behalf of a class.

To the extent Count Five requests an injunction directing Defendants to cease the conduct described in the TAC, the motion to dismiss will be GRANTED because the request is moot; the TAC states that all Defendants have ceased operations.  The court cannot determine the extent to which it lacks subject matter jurisdiction over the remainder of Count Five, as discussed above, so the court will RESERVE RULING on the motion to dismiss the property clean-up portion of the injunctive relief request.  However, because this court should address challenges to its jurisdiction as soon as possible, counsel are ORDERED to meet and confer and, within thirty days from the entry of the order accompanying this opinion, present to the court a joint proposal for addressing this issue.

DATED this 23rd day of September, 2008.


*Karon O. Bowdre*

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE

46