IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ISAIAH EVANS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No.: 1:05-cv-01017-KOB |
| | ) |
| UNITED STATES PIPE & FOUNDRY COMPANY, INC., et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

This matter comes before the court on the Parties' "Joint Motion for Final Approval of Class Action Settlement and Incorporated Memorandum of Law in Support" (doc. 294) and "Joint Motion for Approval of Scholarship Fund Agreement" (doc. 295), and Plaintiffs' "Motion to Certify Final Settlement Class and for Award of Fees, Expenses, and Class Representative Incentive Award" (doc. 293), all in accordance with the Parties' Stipulation of Settlement and Compromise ("Stipulation").[1]

The claims in this class action lawsuit originate from certain property damages that allegedly resulted from the Defendants' disposal of contaminated foundry sand and other waste products. Plaintiffs alleged that Defendants' negligent disposal practices in the course of their manufacturing operations led to the release of contaminated soot and water that damaged their commercial and residential properties.[2]

---

[1] The Stipulation is attached as Exhibit A to the Parties' Joint Motion for Entry of Preliminary Approval Order (doc. 286). The terms used in this Memorandum Opinion shall have the same meanings as defined in the Stipulation except as otherwise specified.

[2] Though Plaintiffs' claims originally included allegations of personal injury damage, those claims involving personal injury were later omitted.

On October 26, 2010, Plaintiffs and Phelps Dodge Industries, Inc. ("PDI"), MW Custom Papers, LLC ("MWCP"), FMC Corporation and United Defense, LP (together, "FMC/UDLP"), and U.S. Pipe and Foundry Company LLC ("USP") (collectively "Settling Defendants"), entered into the Stipulation that set forth the terms on which they agree to the settlement of this action, subject to court approval. The Stipulation, together with its Exhibits, subject to the Settlement Fairness Hearing, sets forth the terms and conditions for the settlement and further related proceedings, including notice to Class Members and the opportunity for Class Members to object to or opt out of the settlement. Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Parties jointly moved for the court's entry of an Order that preliminarily approved the settlement of this case, and, among other things, authorized notice to be sent to Class Members in accordance with the Stipulation. Plaintiffs moved for an Order that preliminarily certified the case for settlement purposes only.

In response, on October 28, 2010, the court entered a Preliminary Approval Order (doc. 287), preliminarily approving the settlement provided for in the Stipulation, and conditionally certifying for settlement purposes only a Settlement Class, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. The court finds that it has jurisdiction over this action and the Parties under 28 U.S.C. § 1332(d)(2) for the purposes of approving and overseeing the administration of the proposed class settlement.

After appropriate notice to the Class Members, the court conducted a Settlement Fairness hearing on February 17, 2011 in Anniston, Alabama. Having considered carefully the motions, supporting memoranda, the Stipulation and all its attachments, the Third Amended Complaint and other pertinent pleadings, all other submissions, briefs,

and evidentiary materials filed, the arguments of Counsel, and the comments of Class Members present at the hearing, and having conducted a rigorous review of the requirements of Rule 23 of the Federal Rules of Civil Procedure, and noting the absence of any objections to the Settlement by Class Members, the court finds that the motions are due to be GRANTED, for the reasons stated below.

A.       **Preliminary Approval Order and Subsequent Notice**

In the Preliminary Approval Order, the court approved the form and content of the Class Notice and other forms and means of notice, including the initial mailing of a post card to Class Members listed in the database of Class Counsel, the posting of a more complete notice on the website of Class Counsel, and the publication of notice in *The Anniston Star*, as described in the Stipulation and as attached as exhibits to the Stipulation.  The court now finds that the mailing, website posting, publication, and other means of such notice in the manner and form set forth in the Stipulation constituted the best practicable notice under the circumstances, and constituted fair, reasonable, and adequate notice of the settlement to all Class Members, in full compliance with the requirements of Fed. R. Civ. P. 23, the Alabama Constitution, and the United States Constitution, including the Due Process Clause.

Pursuant to the Preliminary Approval Order, the Class Notice advised Class Members of, among other things, the preliminary certification of the Class; the proposed settlement of the Action; the proposed settlement benefits to the Class Members; and gave each Class Member the right to be excluded from the class (i.e., to "opt out"), an opportunity to serve and file objections, and to be heard with respect to any related matter.

Individual notice was provided to all Class Members listed in the database of Class Counsel; the Notice of the Proposed Settlement was provided by publication in *The Anniston Star*; and, along with all pertinent documents, the Notice was posted on the website of Class Counsel.  Affidavits filed with this court and testimony at the hearing demonstrate that the Parties have complied with the Preliminary Approval Order regarding the form and provision of notice and have given the best notice practicable under the circumstances.  Such notice constituted valid, due, and sufficient notice to all Class Members, complying fully with the requirements of Fed. R. Civ. P. 23, the Alabama Constitution, and the United States Constitution, including the Due Process Clause.

Settling Defendants provided Notice to Appropriate Federal and State Officials, in a form approved by the court that satisfied the requirements of 28 U.S.C. § 1715, and received no response.  The court finds that the proposed settlement does not trigger the reporting provisions and is, in fact, exempt from reporting under Section 111 of the Medicare, Medicaid and SCHIP Extension Act of 2007 (MMSEA) because, *inter alia*, the settlement has the effect of releasing only claims related to property damage, not personal injury or medical claims.[3]

The Parties have applied for final approval of the terms of the Stipulation and for the entry of the Final Judgment.  Pursuant to the Preliminary Approval Order and upon notice to the Class Members, the court held a hearing on February 17, 2011, to consider whether the Stipulation and the settlement of the action as to the Settlement Class set

---

[3]  *See* Ctrs. for Medicare & Medicaid Servs., *MMSEA Section 111 Medicary Secondary Payer Mandatory Reporting, Liability Insurance (Including Self-Insurance), No-Fault Insurance, and Workers' Compensation USER GUIDE*, July 12, 2010, available at https://www.cms.gov/MandatoryInsRep/Downloads/NGHPUserGuideV3.1.pdf.

4

forth in the Stipulation should be approved as fair, just, reasonable, and adequate, and to consider Plaintiffs' request for award of Attorney's Fees, expenses and incentive awards to Class Representatives.

**B.      Class Responses**

The Parties have provided the court with a list of the eleven individuals who submitted Requests for Exclusion, filed under seal.  (Doc. 292.)  The court has carefully reviewed this list and the information provided.  As explained below, the court finds that only two of the listed individuals validly opted out of the Class.

        1.      The two individuals listed in Paragraphs 1 and 2 of Doc. 292 timely submitted properly completed Requests for Exclusion from participation in this Class and appear to be Class Members. Accordingly, the court finds that they have timely exercised their right to opt out of the Settlement Class.

        2.      The six individuals listed in Paragraphs 3, 4, 5, 6, 7, and 10 of Doc. 292 submitted <u>both</u> a Request for Exclusion, indicating an intent to opt out, *and* a Settlement Cash Fund Claim Form, indicating an intent to participate in the settlement.  To resolve the confusion, Class Counsel communicated with each of these individuals and reports that each have confirmed, in writing, that they want to continue to participate in the Settlement Class and do not want to opt out.  The Parties have indicated that they have no objection to the withdrawal of these exclusion requests.  Accordingly, the court will disregard the exclusion requests for these six individuals.

        3.      One individual, listed in Paragraph 11 of Doc. 292, submitted a Request for Exclusion but failed to meet the deadline for doing so set forth in the

Preliminary Approval Order and Class Notice. Accordingly, the court will disregard this exclusion request as untimely. *See In re HealthSouth Corp. Securities Litigation*, 334 Fed. Appx. 248 (11th Cir. 2009) (affirming district court's denial of untimely request to opt out where unnamed member had active and constructive notice of the settlement, and holding that excusable neglect did not warrant enlargement of opt-out time).

    4. The two individuals listed in Paragraphs 8 and 9 of Doc. 292 did not properly complete the Request for Exclusion. As a condition to opting out, the Request for Exclusion form (and the Order preliminarily approving the Settlement and the form) expressly required each putative Class Member who seeks to opt out to identify the property that he or she was opting out of the Settlement Class. These two individuals did not provide this information. Accordingly, their exclusion requests are invalid.

No members of the Settlement Class filed objections or comments to the Stipulation. Some Class Members who appeared at the fairness hearing did raise questions about the amount of the Settlement and raised questions about the administration of the Settlement.

## C.  <u>Appropriateness & Approval of the Settlement</u>

Whether to approve a settlement in a class action lawsuit is a decision "left to the sound discretion of the trial court," and the court's decision will not be overturned "absent a clear showing of abuse of that discretion." *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984). Moreover, courts have "repeatedly recognized that settlements are 'highly favored in the law and will be upheld whenever possible because they are

6

means of amicably resolving doubts and preventing lawsuits.'" *Bennett v. Behring Corp.*, 96 F.R.D. 343, 348 (S.D. Fla. 1982), *aff'd,* 737 F.2d 982 (11th Cir. 1984) (quoting *Miller v. Republic Nat. Life Ins. Co.,* 559 F.2d 426, 428 (5th Cir. 1977)).  In general, courts favor settlements in class action cases because they "conserve judicial resources by avoiding the expense of a complicated and protracted litigation process . . . ." *In re Motorsports Merch. Antitrust Litig.,* 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000).

The Eleventh Circuit has directed district courts to consider the following factors in evaluating the fairness, reasonableness, and adequacy of a class settlement:

> (1) likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Dikeman v. Progressive Express Ins. Co.*, 312 Fed. Appx. 168, 171 (11th Cir. 2008) (*per curiam*) (quoting *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984)); *see also United States v. Alabama*, 271 Fed. Appx. 896, 900 (11th Cir. 2008) (*per curiam*).  Consideration of these factors supports a finding that the Settlement, as set forth in the Stipulation, is fair, reasonable, and adequate.

1.  The likelihood of success at trial.

Assuming they could survive summary judgment, Plaintiffs in this case would bear a significant burden at trial in proving, *inter alia*:  (*i*) their claims were not barred by the rule of repose or statutes of limitation;[4] (*ii*) they have standing to sue (*e.g.*, the

---

[4] In a 46-page Memorandum Opinion, this court earlier explained its grounds for dismissing Plaintiffs' claims against several of the originally named Defendants based on Alabama's statutes of limitations and common law rule of repose.  (*See* Doc. 186.)  The court noted as to the remaining claims and Defendants that "some of Plaintiffs' claims may be barred under one or both of these doctrines, but the court cannot determine which ones without evidence unavailable at this [early] stage of the proceedings." (*Id.*)

existence of contamination on their property in sufficient amounts to constitute an injury in fact); (*iii*) the damage to their property was caused by one or more of the Settling Defendants and not other industrial or environmental sources; and (*iv*) the contamination on Plaintiffs' property has caused an actual and calculable diminution of property value. In sum, the risks of establishing liability and damages at trial support approval of the Settlement.

In addition, the Defendants fiercely challenged the propriety of certifying a Settlement Class in this case. The Plaintiff's Motion for Class Certification (doc. 245), which included 65 exhibits that contained 881 pages (doc. 246), underwent months of lengthy and intensive briefing on the merits. Defendants opposed Plaintiff's motion with a 46-page Joint Brief supported by 1,456 pages of exhibits (doc. 253). Plaintiffs' countered with a 35-page Reply brief (doc. 258). Ultimately, had the Parties not reached a settlement that provided for certification of a class for settlement purposes, the Plaintiffs faced many considerable legal challenges, as raised by Defendants.

Furthermore, the court also notes that Rule 23 permits a district court to decertify a class at any time, if it becomes unmanageable. In the event that this case were to proceed through litigation rather than Settlement, Settling Defendants would continue to oppose class certification, as evidenced by the opposition to certification filed prior to the filing of the Stipulation. The opposition would be based upon a number of factors including: (*i*) the failure to satisfy the numerosity requirement of Rule 23; (*ii*) the predominance of individual issues, such as standing, proximate cause (as to the source of the contamination), and affirmative defenses (such as those relating to the period of ownership of the subject properties); (*iii*) the superiority of individual actions to class

treatment; and (*iv*) the adequacy of the named Plaintiffs based on challenges to their lack of standing, lack of knowledge, and claim-splitting. The risk of decertification weighs in favor of the fairness of the Settlement.

2. <u>The range of possible recovery and the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable.</u>

When considered in light of the risks involved in attempting class certification and trial, including the speculative nature of any damage, the amount of the proposed settlement is inherently reasonable. Designated individuals from each residential property address within the appropriate zones are eligible to apply for a scholarship in an amount not to exceed $500.[5] Property owners living within Zone 1-D may be eligible for a cash payment of $250.[6] The Scholarship Fund created by the Settlement for the benefit of Class Members and their families (a) may increase the value of Eligible Properties; (b) will satisfy the objective of the Action; (c) will otherwise serve the interest of Class Members; and (d) can be administered on a cost-effective basis.

Balancing these benefits against the risks of attempting to obtain class certification, avoiding summary judgment and taking the case to trial, and the speculative nature of any recovery supports the Settlement.

3. <u>The complexity, expense and duration of the litigation</u>.

A number of complex legal and factual issues would need to be addressed if the Settlement were not approved. Those issues include possible sources and pathways of

---

[5] The eligibility verification form to the Scholarship Application states that scholarship benefits extend to the owners and former owners of property located in the designated Property Settlement Zones, as well as their spouses, children, grandchildren, and dependents. *See* Exhibit A to Stipulation of Settlement and Compromise, Doc. 299, at 9.

[6] The amount of any Cash Claim paid to a current owner would be deducted from the amount of any Scholarship that otherwise would be awarded to an eligible applicant.

9

contamination on properties; the appropriate standard(s) for determining if any contamination is present; the impact of perceived contamination on property value in current real estate markets; and the applicability of the rule of repose, statute of limitations, and time periods during which any alleged contamination still present was first received by the property.  The complexity of these legal and factual issues would impact the expense of litigation, both in terms of the factual discovery required to address those issues and the professional support and expert testimony required. The expense to the Parties and the court would be significant.  Because of the complexity of the legal and factual issues and the number of property owners involved, the length of time required to bring this matter to conclusion, absent settlement, would be expansive. The complexity, expense and time required to try this case further support the fairness of the Settlement.

4. <u>The substance and amount of opposition to the settlement.</u>

The complete absence of objections and the paucity of opt-out elections support approval of the Settlement. Of the more than 40,000 residential properties at issue, only one property will be excluded from the Settlement Class based upon timely and properly completed exclusion requests submitted by that property's two owners.  Of the approximate 13,000 individuals identified as Potential Class Members in Class Counsel's database, who received direct postcard notice of the proposed settlement and the opportunity to opt out, only eleven exclusion requests relating to six properties were received; of those, six were withdrawn and three were deemed invalid, leaving only two properly completed and timely submitted exclusion requests.

5. <u>The stage of proceedings at which the settlement was achieved.</u>

The proceedings in this matter commenced in 2005, made a trip to the Eleventh

Circuit on appeal (*see Isaiah Evans et al. v. Walter Industries, Inc. et al.*, No. 06-11974 (11th Cir. May 22, 2006) (reversing district court's remand of case to state court), included numerous rounds of motions to dismiss and amended complaints, and finally concluded class discovery in 2010, after dozens of depositions had been taken and thousands of pages of discovery had been exchanged.  A hotly contested Motion for Class Certification (doc. 245) and several Motions for Summary Judgment (docs. 243, 255) were filed and briefed prior to this Settlement being negotiated.  Class Counsel were required to analyze the discovery taken to prepare and file the materials in support of class certification.  In addition, approximately one year ago, Class Counsel finalized the settlement of *Almon, et al. v. McWane, Inc., et al.,* CV-04-1112, Circuit Court of Calhoun County, Alabama, a class action involving similar allegations against a different defendant but affecting the same geographic area.  As a result, the court finds that Class Counsel has sufficient knowledge of the facts of this case to support the Settlement.  These facts confirm that the Parties engaged in vigorous discovery and litigation before the proposed settlement was negotiated and submitted to the court.

In addition to the factors analyzed above, other factors weigh in favor of the Settlement, including (1) the ability of the Class to obtain educational benefits without the requirement of proving the existence of contamination on a property-by-property basis; (2) the availability of Class benefits immediately rather than at the conclusion of protracted litigation with unknown results; and (3) the absence of any question, inquiry, or objection by the Federal and State Officials to whom Notice of the Settlement was provided pursuant to 28 U.S.C. § 1715.

The above findings indicate that the Settlement: (a) provides significant financial

benefits to Class Members through the creation of a Scholarship Fund that will permit Class Members to improve their education and employability and will make a positive economic impact on the community; (b) was the result of extensive good-faith arms-length negotiations following Class Counsel's reasonable and thorough investigation of the facts and law relating to the claims asserted by Class Members, including examination of documents produced by Settling Defendants in response to discovery requests, conducting soil testing, and retaining experts to conduct tests and to review testing and scientific data produced by Settling Defendants; and (c) is in all respects fair, reasonable, and adequate and in the best interests of the Plaintiffs and the Settlement Class.

### D.   Certification of Final Settlement Class, Attorneys' Fees, and Class Representative Incentive Award

The court has reviewed the Plaintiffs' "Motion to Certify Final Settlement Class and for Award of Fees and Expenses, and Class Representative Incentive Award." (Doc. 293.) The court finds that Class Counsel have vigorously prosecuted the claims on behalf of the Class, have expended considerable time, and undertaken considerable risk in representing the Settlement Class in this matter.  Class Counsel have ably represented the Class before this court in a complex, document intensive, and expert intensive action.  The court has considered the complexity of the action; the time expended; the novelty of the questions presented, including difficult issues regarding statutes of limitation and the rule of repose and causation; and the customary contingent fees for class action cases resulting in a common fund recovery, and determined that Class Counsel's request for expense reimbursement in the amount of $108,000.00, and attorneys' fees in the amount of $510,000.00 are fair and reasonable in this case.  The affidavit submitted by lead Counsel Dennis Pantazis reflects that the Wiggins, Childs, Quinn & Pantazis, LLC law firm

("WCQP") records reveal $1,185,925.00 expended in time prosecuting this case, based on their standard hourly rates. This figure further affirms the reasonableness of the compromise as a whole regarding attorneys' fees.

Therefore, the court finds the motion for an award of $108,000.00 in expenses and $510,000.00 in attorneys' fees to is due to be granted.

**Conclusion**

For the foregoing reasons, the court finds that the proposed Settlement of this case is due to be approved and the pending motions before the court, as described above, are due to be GRANTED.  The court will enter a separate Final Judgment and Order to this effect contemporaneously with this Memorandum Opinion.

DONE this 28th day of February, 2011.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE